CRUM (WOODBURY v.). See Case No. 17,969.

CRUMB (TODD v.). See Case No. 14,073.

---

## Case No. 3,455.

### CRUMP v. CHAPMAN.

[1 Hughes, 183; 15 N. B. R. 571; 1 Va. Law J. 309; 24 Pittsb. Leg. J. 169.][1]

District Court, E. D. Virginia. April, 1877.

FRAUDULENT CONVEYANCES — BILL TO SET ASIDE BY ASSIGNEE IN BANKRUPTCY — PLEADING AND PROOF.

1. A bill in equity brought to set aside a sale as fraudulent, under sections 5128 and 5129 of the Revised Statutes of the United States, as amended June 22, 1874 [18 Stat. 180], must charge that the defendant knew that the sale was in fraud of the provisions of the bankruptcy act, and this knowledge must be proved in evidence.

2. Where such an averment and such proof are wanting, the bill will be dismissed.

In equity.

J. M. Gregory and John S. Wise, for complainant.

John Lyon, for defendant.

HUGHES, District Judge. The firm of Hutcheon Brothers were engaged in business in two adjoining tenements on Seventeenth Street, Richmond, Va. In one of them they were conducting a barroom; in the other a family grocery store. The firm consisted of two brothers, Archibald and George Hutcheon. They lived in the upper rooms of the premises, and were unmarried; a maiden sister, until within a short time of the transactions connected with the bankruptcy proceedings in the case of Hutcheon Brothers, keeping house for them. In November, 1876, George Hutcheon suddenly disappeared, having on his person between three and four hundred dollars of the money of the firm; taking no baggage, and making no previous preparation or announcement of his purpose. He has never since been heard of. The probability is that he was waylaid and foully dealt with in this city, as no clue has ever

[1] [Reported for the Virginia Law Journal, reprinted in 1 Hughes, 183, and here republished by permission.]

been found to give the least indication of his fate. The surviving brother, Archibald, was naturally much disconcerted in his business and disturbed in mind by the occurrence. Whether from this cause alone, or this and others combined, this brother and the firm became insolvent. On or about the 23d of December, 1876, Archibald Hutcheon sold the stock in trade, lease, and good-will of the barroom to one James C. Shadbolt. On the 23d of December, 1876, he contracted with Alexander Chapman, the defendant in this cause, to sell him the stock in trade, accounts, lease, and good-will of the grocery store; and on the 25th of December he delivered to Chapman the store and contents. It was agreed between A. Hutcheon and Chapman that Hutcheon should remain as employé in the store on agreed wages for a month or more. There is no doubt that Hutcheon Bros. were insolvent at the time of this sale, and that Archibald Hutcheon had reason to believe that he and his firm were then insolvent, and that the assignments he made on that day were acts of bankruptcy. There is doubt from the evidence whether he made the sale with any design to defraud the bulk of his creditors of their right to equal distribution under the bankruptcy act.

On the 25th and 26th days of December, 1876, attachments were sued out of state court, of Richmond, against the firm as absconding debtors, though Archibald Hutcheon was in the city, at his usual place of business. These were levied, on the 25th of December, upon the contents of the barroom, then in the possession of Shadbolt; and they were levied on the 26th of December, on the contents of the grocery store. The property seized being perishable, the state court ordered its sale before the trial of the attachment suits; and the proceeds to be deposited in bank to the credit of the state court, which was done. At the trial of the attachment suits the plaintiffs were cast; but great damage had been done to Shadbolt and to Chapman by the seizure of the property which had been sold them by A. Hutcheon, and by its hurried sale by the sheriff. On the 25th of January, 1877, a petition was filed in this court by certain creditors of Hutcheon Bros., charging the sales which have been mentioned to have been acts of bankruptcy, and praying that the firm and each member of it might be declared bankrupts. Archibald Hutcheon answered the petition, denying with much feeling all intention of fraud. On the 20th of February, 1877, the firm were adjudicated as bankrupts, on technical grounds; the order of adjudication embodying a clause relieving the firm from the imputation of actual fraud. The assignee in bankruptcy of Hutcheon Bros. now brings this suit on the equity side of this court, charging that the sale to Chapman was made by an insolvent firm, under circumstances, as to Chapman, which constituted reasonable cause for his believing that they were insolvent, charging, therefore, that the sale or assignment was void, and praying the court for a decree declaring it null and void, and for the usual relief granted in such cases.

The evidence which has been taken in this case is quite voluminous, but I do not think it necessary for me to go into a detailed discussion of it. Chapman, the purchaser of the grocery business and stock of goods, seems to be quite a young man, without experience in that kind of business. His countenance strikes me as ingenuous, and his deportment as becoming. He denies with emphasis in his answer and in his depositions having had any knowledge of the insolvency of the firm of Hutcheon Bros. at the time of his purchase of the business, or any knowledge of any intention on the part of Archibald Hutcheon, in making the sale of the grocery business to him, to commit a fraud under the provisions of the law of bankruptcy. All his statements on these heads are consistent, positive, and very earnest. Most of the evidence which has been taken by the complainant goes to the point of proving the insolvency of Hutcheon Bros. I think that the evidence of that fact, which has been taken, is admissible against Chapman. But, of the evidence which was taken tending to prove that Chapman had reasonable cause to believe the insolvency, only such is admissible against him as is brought home to his personal knowledge before and at the time of his purchase, and as consists with the rules of evidence which are usually enforced in courts of justice. The evidence of this sort taken in this cause really admissible against Chapman is exceedingly meagre.

This is a suit in equity in which the plaintiff has put the defendant upon his answer under oath, and in which the averments of that answer, which are responsive to the charges in the bill, must stand as true, until overcome by the testimony of either two credible witnesses or one credible witness and strong corroborating circumstances. Now I do not think the evidence taken for the plaintiff in this cause tending to prove that Chapman had reasonable cause, on the 23d of December, 1876, to believe that the firm of Hutcheon Bros. was insolvent, and that Archibald Hutcheon made the sale to give him a preference and to evade the provisions of the bankruptcy law, is so strong and conclusive as to outweigh the positive, earnest, emphatic, reiterated, sworn denial of the charge, made by Chapman in his answer. This holding of mine, however, does not touch the real point on which the case turns, and it is unnecessary for me to dwell upon this part of the case. It is not worth while to examine critically the evidence on this point, or to weigh it in comparison with the averments and denials of the answer. The

case really turns upon another and quite different question. Nor is this bill to be treated as one brought under the first section of chapter 114 of the Code of Virginia, to set aside a sale as fraudulent in fact, or as a sale to be considered prima facie fraudulent from the fact that the vendor remained in custody of the goods sold. There is nothing in the frame or allegations of the bill to give it such a character. It is, therefore, not competent for me to consider the authorities cited by counsel for the plaintiff, ranging from Twyne's Case, in 2 Coke, 212, down to the Davis v. Turner Case, in 4 Grat. 422,—cases in which the effect of the vendor's retaining possession of the goods, after sale, upon the validity of the sale, is treated.

The bill in this case is founded purely and simply upon sections 5128 and 5129 of the Revised Statutes of the United States, as amended by section 11 of the act of June 22, 1874. Those sections, as amended, require that the person receiving the benefit of an assignment from an insolvent must not only have reasonable cause to believe the vendor to be insolvent, but must "know" that such assignment is made in fraud of the provisions of the bankruptcy law. Under the amendment of June, 1874, a sale which is an act of bankruptcy on the part of the insolvent is not void as to the vendee, unless the vendee "knows" that it is made in fraud of the provisions of the bankruptcy act. Singer v. Sloan [Case No. 12,898]; and [Id. 12,899]; Tinker v. Van Dyke [Id. 14,058]; and in [Van Dyke v. Tinker, Id. 16,849]; and Barnewall v. Jones [Id. 1,027]. Certainly, therefore, since that amendment has been made a part of the law of bankruptcy, has it become necessary in bills of this sort to charge that the person receiving the benefit of a preference or assignment knew that it was made in fraud of the provisions of the bankruptcy acts. Certainly it is necessary for the plaintiff, in his evidence taken in support of such a bill as this, to prove that the defendant knew that the assignment to him was made in fraud of the provisions of the bankruptcy act. Both of these prime essentials are wanting in this cause. The bill does not contain the material averment and charge required by the amending act of June, 1874. Though no advantage of this omission was taken in time by demurrer, no evidence has been brought to prove that this knowledge existed on the part of the defendant, no direct evidence at all, and no circumstantial evidence sufficient to establish the fact. Hutcheon and Chapman being both foreigners, knowing little of our law, it is not probable that either the one or the other of them had any knowledge of the bankruptcy act, or suspicion that their transaction was in fraud of its provisions. It is true that ignorance of the law excuses no one, but yet when a law in express terms makes it necessary that a citizen, in being passive party to an act, shall know that a law is violated in order

that the act shall be declared void, the burden of proof is thrown upon the party complainant in a suit brought to set aside such an act to establish the fact of knowledge of the violation. I will sign an order dismissing this bill.